EUGENE VIAN, APPELLEE, v. BENJAMIN J. HILBERG ET AL., APPELLEES; SARVIS LUMBER COMPANY ET AL., APPELLANTS.

FILED NOVEMBER 26, 1923.    No. 22551.

1.  Principal and Surety: CONTRIBUTION. A number of persons at different times were induced by fraud to purchase shares of stock in a corporation giving their notes therefor; the corporation, being indebted to a bank, transferred the notes to the bank as collateral security for such indebtedness; the bank received the notes in good faith and before maturity; the corporation failed to pay the bank, whereupon one of the note-makers brought suit against the others and the bank to enforce contribution between the note-makers, the amount due the bank being less than the total amount of the notes. *Held*, that, under the conditions stated, the note-makers stood in the relation of sureties for the corporation, and in equity should bear the loss proportionately; that payment of the debt is not a prerequisite to the bringing of such a suit.

2.  ———: ———: PARTIES. The corporation was not a necessary party to the suit for **contribution.**

3.  Venue: SUMMONS TO ANOTHER COUNTY. A purely personal action must be brought in the county where at least one of the substantial defendants resides, or may be summoned, in order to authorize issuance of summons to other counties, and the rule is the same in equity as at law.

4.  Process: SUMMONS TO ANOTHER COUNTY. In the present case,

Vian v. Hilberg.

the note-makers other than plaintiff were made defendants; all of them resided in Custer county and were the only defendants served in that county; the corporation and all others were residents of Lancaster county, to which summons was sent and service made. *Held*, that such summons was unauthorized.

5. ———: JURISDICTION. Certain defendants having made timely objection by answer to the jurisdiction of the court over their persons, the objections should have been sustained.

6. ———: ———: ANSWER. Under the allegations of the petition, as stated in the opinion, the want of jurisdiction did not appear upon the face of the record in such manner as to require a special appearance to raise the question, but the same was properly presented by answer.

7. ———: ———: WAIVER. The bank was also served in Lancaster county, but made no objection to the jurisdiction of the court over its person. *Held*, that the failure of the bank to claim its privilege from suit in a county other than that of its residence, if it had such privilege in this case, could not operate as a waiver of the like privilege of the objecting defendants. *First State Bank v. Ingrum*, 107 Neb. 468, distinguished.

8. Fraud: EXPRESSION OF OPINION. The letter set out in the opinion *held* to be a mere expression of the opinion of the writer, and, in the absence of evidence that the letter was written with a fraudulent intent, it did not amount to a false representation.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Affirmed in part, and reversed in part.*

*Doyle, Halligan & Doyle* and *Dort, Cain & Witte,* for appellants.

*Sullivan, Squires & Johnson, Good & Good, Crosgrave, Campbell & Ankeny, A. Moore Berry* and *W. A. Selleck, contra.*

Heard before DEAN, ROSE and GOOD, JJ., REDICK, District Judge.

REDICK, District Judge.

This is an action in equity brought in the district court for Custer county; and before stating the substance of the

pleadings it will be necessary to state the facts regarding the parties. The plaintiff, Vian, and the defendants Hilberg, Lewis, Logan, Eddy and Pryor are all residents of Custer county; the defendants Sarvis Lumber Company, Lincoln State Bank, George P. Kimball, Willard Kimball, Perry Anthony and W. A. Selleck are all residents of Lancaster county. All the defendants residing in Custer county were served with summons therein, and all the defendants residing in Lancaster county were served in that county on summons issued by the district court for Custer county. None of the nonresidents of Custer county could be served in that county, and jurisdiction over their persons is asserted under the authority of our statute permitting issuance of summons to counties other than the residence of the defendants where the suit is properly brought in the county from which summons issued.

The facts stated in the petition, and upon which plaintiff bases his cause of action, are substantially as follows: That in 1919 defendants Anthony, the duly authorized agent of the lumber company, and Willard and George Kimball made certain false representations to the plaintiff and the defendants Hilberg, Lewis, Logan, Eddy and Pryor (all residents of Custer county), whereby they were induced to purchase in varying amounts shares of stock of the Sarvis Lumber Company, for which they executed their several notes as follows: Vian $5,000, Hilberg $750, Pryor $4,750, Eddy $2,500 and $5,000, Lewis $5,000, and Logan $5,000 and $5,000, aggregating $33,000; that the Sarvis Lumber Company, being indebted to the Lincoln State Bank in an alleged amount of about $17,000, transferred the notes above mentioned to said bank as collateral security for said indebtedness, but that said bank was not an innocent holder thereof and at the time of receiving them knew that the payors had a good defense as against the lumber company; that the defendant Selleck and the bank aided the agents of the lumber company in the perpetration of the alleged fraud by means of a certain letter of introduction and recommendation of defendant Willard Kimball, signed by

Selleck as president of the bank.   The petition then contains the following which seems to present the theory upon which this action is founded:

"That said lumber company, after obtaining said notes above set out, transferred the same to the defendant bank, as collateral to an alleged indebtedness from said company to the bank, of something like $17,000, and said bank now holds all of said notes above set out, and at the time this action was begun threatened to sue this plaintiff upon his said note.   Said bank knew at the time of said threats that all of the makers of said notes, as well as this plaintiff, denied that it was an innocent purchaser in due course of this said note, and knew that this plaintiff and the other defendants deny liability upon said notes to said bank, and knew that all of said parties claimed and insisted that said bank obtained the said notes with the due notice of the fraud that was practiced upon the makers thereof, in procuring the same, but plaintiff alleges that, at the time this action was begun, the defendant bank was about to single out plaintiff and to sue him first, and to make the said threatened suit against plaintiff a test case, and did not intend to bring suits against the other defendants until the suit against this plaintiff had been finally determined, and plaintiff alleges that said threatened suit against him by said bank was not in good faith for its own use and benefit, but that said suit was threatened against this plaintiff for the benefit of the said lumber company and the said defendants, Kimball and Anthony, and that at the time this action was begun the said bank proposed, at the request of the officers and stock salesmen of said corporation, to hold certain of said notes without suit, and at the time this action was begun said bank intended, if it succeeded in procuring judgment against plaintiff, to compel him to pay the full amount thereof, regardless of the obligation of the other defendants to pay any part of their notes to said bank, and it is the purpose of said bank to bring said action against plaintiff in the courts of Lancaster county, by making the said lumber company a party, which lumber company has

an office in said county, although it knows full well that a judgment against said lumber company could be, and would be, of no avail to it, and knows full well that it could never realize anything on a judgment against said lumber company."

The prayer of the petition is that the bank be required to bring said notes into court and that the same be canceled as having been obtained by fraud and without consideration; that it be decreed that the bank was not an innocent purchaser of said notes; that, in the event that the bank was found to be an innocent purchaser, judgment be rendered proportionately against the several note-makers for the amount found due, and the remainder of the notes canceled upon payment of such proportionate share, and that the plaintiff and other makers of said notes, if they desire, have judgment against the Kimballs, Anthony and Selleck for the amount required to be paid by them respectively upon said notes, and for general relief.

The defendants Hilberg, Lewis, Eddy and Pryor filed answers and cross-petitions setting up the same facts as stated in the petition, and prayed for the same relief.

Defendant Logan answered, and alleged that the court had no jurisdiction over his person or the subject-matter of the action, for the reason that the petition did not state a cause of action against him, and because plaintiff had an adequate remedy at law; admits the purchase of the stock in the lumber company from Anthony, that he gave two promissory notes therefor and the same were afterwards delivered to the bank by Willard Kimball, but denies they were delivered to the lumber company or that the lumber company was ever the owner thereof or that the bank ever had any title or interest therein; and denies each and every other allegation of the petition. He also filed a cross-petition to the same effect.

The Lincoln State Bank answered, setting up various loans to the Sarvis Lumber Company upon which it claimed to be due the sum of $17,978.21 and interest, the pledging of the several notes referred to as collateral security deny-

·Vian v.̈ Hilberg.

ing all the other allegations of the petition, and praying that the action be dismissed as to defendant for want of jurisdiction in equity.

The defendant Selleck filed a general denial of the petition and cross-petition.

The defendants Sarvis Lumber Company, George P. Kimball and Willard Kimball filed a joint and several answer, the first defense in which challenged the jurisdiction of the court in the following language:

"This court has no jurisdiction of the person of defendant Sarvis Lumber Company, because it says Sarvis Lumber Company is a corporation incorporated under the laws of the state of Nebraska, having its principal place of business in the state of Nebraska, at Lincoln, in Lancaster county, Nebraska; maintains no agency, and has no agent in Custer county, Nebraska.

"That the only service of summons upon said defendant in this action was and is summons served upon the president of said company at Lincoln, in Lancaster county, Nebraska; that it has not been served with summons in Custer county, in this action; has no agent or representative in Custer county upon whom service of summons could be made; that it is not impleaded in this action with any defendant served in Custer county, Nebraska, against whom a joint cause of action is stated.

"The defendant George P. Kimball and the defendant Willard Kimball each separately says this court has no jurisdiction of the person of either of these defendants, because each separately says the said George P. Kimball and said Willard Kimball are residents of Lincoln, in Lancaster county, Nebraska, and each of said defendants was a resident of said county and state at all of the times mentioned in the plaintiff's petition.

"Neither of said defendants was served, with summons or process of any nature in this action in Custer county, Nebraska. The only service of summons made, or attempted to be made, upon said defendants, or either of them,

was by the sheriff of Lancaster county, Nebraska, at Lincoln, in Lancaster county, Nebraska.

"No defendant was served in Custer county, Nebraska, against whom a joint cause of action is stated with either of these defendants.

"Wherefore, each of said defendants prays the service of summons as to each of them be quashed."

The answer then admits that George P. Kimball is secretary and treasurer, and Willard Kimball, at the time stated, president of the lumber company; denies that the Kimballs solicited the plaintiffs in Custer county to purchase stock in the lumber company; denies that at any time or place they made any false statement or representations concerning the property or financial condition of the lumber company; admits the purchase by the Custer county residents of the stock of said company, and the giving by them of the notes above referred to; admits the indebtedness of the lumber company to the bank in the amount alleged by the bank, and the transfer of said notes to the bank as collateral security; denies each and every other allegation of the petition, and prays that the plaintiff take nothing by his pretended cause of action, and that the court determine it has no jurisdiction of the persons of said defendants.

Replies were duly filed putting in issue the new matter contained in the answers.

The trial to the court resulted in a decree, finding that the various notes given for stock in the lumber company were procured by the fraudulent representations of Anthony and Willard Kimball, as agent and president of the lumber company, and that the makers had a good defense against the lumber company thereto; that the defendant bank was not liable in connection with the letter of Selleck, and that Selleck was guilty of no fraud in that connection; that the bank was in the position of an innocent purchaser of the notes in question, and that the indebtedness to it from the lumber company was the sum of $14,050, with interest at 8 per cent.; finds the amount due on the respective notes, and that the makers should pay the bank proportionally,

except defendant Logan. As to Logan, the finding was that, as he had interposed no defense to the notes, he should pay the full amount thereof, to be credited upon said indebtedness of the bank, the other makers to pay the balance proportionately. The decree also provided for contribution between the note-makers in case any of them were compelled to pay more than his share of said indebtedness as fixed by the decree; and the case was dismissed as to defendants Selleck and George P. Kimball.

The defendants Sarvis lumber company and Willard Kimball appeal to this court, joining Vian, Hilberg, Lewis, Logan, Eddy, Anthony, Pryor, Selleck and the bank as appellees, all of whom filed cross-appeals.

The case presents a number of complications, and for the sake of clearness we have divided the parties into groups in order that the various contentions may be more readily perceived:

Group A—plaintiff Vian and defendants Hilberg, Lewis, Eddy and Pryor.

Group B—defendant Logan.

Group C—defendant Lincoln State Bank, the lumber company, and the Kimballs.

Group D—defendants bank and Selleck.

Group E—defendants lumber company, George and Willard Kimball.

All the members of group A seek the same relief as the plaintiff, and present no contest as between themselves.

As to group B, no such relief as was granted in the decree was asked by group A, and the only contest here involved the amount which Logan should contribute to the claim of the bank, in which question none of the other defendants outside of group A had any interest.

As to group C, the charge is that they fraudulently conspired together to bring suit in Lancaster county against the plaintiff alone and thereby deprive him of the benefit of his alleged equitable right of contribution from the other note-makers.

As to group D, the charge is that Selleck and the bank

aided in the perpetration of the fraud on groups A and B.

As to group E the charge is that the lumber company, through its agents, the Kimballs and Anthony, made false representations inducing plaintiff and others of groups A and B to purchase stock of the lumber company, resulting in the giving of the various notes referred to.

It will be observed at once that the petition of plaintiff presents a number of diverse and distinct controversies, in and with no one of which are all of the defendants interested or connected. Claims cognizable in equity are joined with those of a purely legal character; as against one defendant, plaintiff seeks an accounting; as against others, the cancelation of the notes; as against others, all residents of Custer county, he seeks contribution as between sureties; and as against others, he seeks a judgment for damages for false representations.

At the threshold of this case we are met with objections to the jurisdiction of the court over the persons of the defendants included in group E. For the purpose of determining this question, the interest of the several parties in the matters stated as the basis of plaintiff's claim for relief is a controlling factor, regardless of their designation as plaintiffs or defendants; all persons having a common interest in obtaining the relief must be placed on one side, and all those opposed, on the other. Therefore, the parties composing groups A and B, all being in like situation and interested in obtaining the relief demanded (according to allegations of the petition), must be considered as plaintiffs, and those resisting the granting of such relief as defendants. It follows that the joinder as defendants of parties who have no interest adverse to the plaintiff, but who, on the contrary, are only interested in obtaining the same relief for which the plaintiff prays, can furnish no basis for the issuance of summons to other counties on the theory that the case was properly brought in the county of the process. It is essential to consider the nature of the case with reference to the county in which it must be brought, and it

is conceded to be transitory, and included within those cov-, ered by the provisions of section 8563, Comp. St. 1922:

"Every other action must be brought in the county in which the defendant, or some of the defendants, resides or may be summoned."

And the procedure in such case is governed by section 8570, Comp. St. 1922: "When the action is rightly brought in any county, according to the provisions of this code, a summons shall be issued to any other county, against any one or more of the defendants, at the plaintiff's request."

These sections have been construed many times by this court, and in *Barry v. Wachosky,* 57 Neb. 534, it was said the test for determining whether an action be rightly brought in one county against the defendant found, and served therein, so that the other defendant may be served in a foreign county, is whether the defendant served in the county in which the action is brought is a *bona fide* defendant to that action—whether his interest in the action and in the result thereof is adverse to that of the plaintiff. *Hanna v. Emerson,* 45 Neb. 708, and cases there cited. It is claimed, however, that all defendants are interested in preventing the relief asked by the plaintiff and are, therefore, properly joined. The difficulty here is that no one of the objecting defendants alleged to be so interested resided in or was served in Custer county. Service must be had in the county upon some one jointly interested with the nonresident defendant in defeating the plaintiff, before summons can issue to another county. It is stated, in the brief of appellees, to be well settled in Nebraska "that the rule in equity with regard to joinder of defendants and the bringing in of defendants from other counties differs radically from the rule in an action at law." No citations in support of this statement are given, and we think it cannot be maintained as applicable to the question of jurisdiction depending upon the proper construction of the two sections of the statute above quoted. The statute makes no such distinction, and we know of no decision announcing it in that connection. It may be conceded that in an equitable

action for an accounting or for contribution or to cancel notes or contracts, where one of the defendants against whom the particular relief is sought is properly summoned in the county of the action, summons may issue to other counties to bring in other persons jointly interested with the local defendant in defeating the plaintiff. But that is not this case. Here the only parties served in the county are those interested with the plaintiff in obtaining the same relief that he seeks; if plaintiff succeeds, all those parties will be benefited by a reduction of their debts. If this contention of appellees were true, and it was sought to obtain specific performance of a contract between A and B, on the one part, and C, on the other, the land being located in the county of C's residence, A might bring suit in some other county, join B as defendant, and compel C to defend in a county other than his residence. Again, in·case of a promissory note to A and B, signed by C, by joining B as a defendant and issuing summons·to another county for service upon C. And it would make no difference in either case that B would refuse to join plaintiff, and that he was therefore made a defendant, for no relief is sought against B, and therefore, from C's angle,.the action is not properly brought against B. These illustrations serve to demonstrate the absurdity of plaintiff's claim that, by service upon resident defendants in Custer county, any authority to issue summons to other counties was obtained.

But it is argued that Logan, one of the defendants residing in Custer county, resisted the plaintiff and presented a real controversy; but the only controversy between plaintiff and Logan was as to whether Logan was entitled to contribution from the others, in which controversy the objecting defendants had no interest whatever; and this controversy only arose upon the filing of Logan's answer; it was not presented by the petition. The defendant served in the county of suit must have an interest adverse to the plaintiff in obtaining relief against the nonresident, in order that service upon him may be made the foundation for the issuance of summons to another county (*Hanna v. Emerson,*

45 Neb. 708), where it was also held that section 65 of the Code (8570, *supra*) does not apply where the person served in the county is only a nominal defendant. And in *Stewart v. Rosengren*, 66 Neb. 445, it was held that section 65 could not be evaded by joining nominal defendants, and the fact that the resident defendant had a controversy with the plaintiff is immaterial, since the nonresident defendant has no interest or liability in connection with such controversy. It needs no argument to show that neither of the objecting defendants had any interest in the dispute between plaintiff and Logan, above mentioned. The fact that the bank and some of the other defendants did not object to the jurisdiction over their persons cannot serve to bring the case within section 8570, *supra*, because at the time the suit was brought and summons issued the nonresident defendants were not subject to suit in Custer county, and therefore, the suit cannot be said to have been properly brought in Custer county, unless at least one substantial defendant was a resident of or served in that county, which condition, as before observed, is not present. Neither can the waiver of the bank in that connection affect the right of the objecting defendants, as each have a personal right to insist that in a purely personal action he shall not be sued in a county other than that of his residence; and this right can only be waived by him or his agent, and not by a codefendant standing in no such relation.

In this connection we have not overlooked the case of *First State Bank v. Ingrum*, 107 Neb. 468, in which it was held that, where one of two defendants liable jointly to plaintiff was served in the county where suit was brought, whether the county of his residence or not, at a time when he was in the county for the purpose solely of testifying as a witness in another case, which fact would privilege him from such service, but which privilege he waived, the non-resident could not raise it for him for the purpose of defeating the jurisdiction of the court over his person; the reason given being that the privilege from service was personal to the defendant, and he might waive it. The case is

clearly distinguishable from this, in that there was a joint liability and one of the defendants was served in the county, which furnished complete authority for the issuance of the summons, and the waiver was of a right personal to the party making it; while in the instant case the waiver of the bank and other defendants of their personal right to exemption from suit in a county other than that of their residence cannot be given effect as a waiver of the rights of the objecting defendants with respect thereto. If a joint cause of action were stated against the party served and the nonresident, no question of waiver would arise, because, one defendant being served in the county, the other may be brought in.

We are clearly of the opinion upon the considerations stated that, if the question has been seasonably presented, the district court for Custer county acquired no jurisdiction over the persons of the objecting defendants. But the plaintiff contends that all matters inimical to jurisdiction appeared upon the face of the record, and that defendants should have raised the point by special appearance, and that, by joining the objection to the jurisdiction over the person with a plea to the merits, the defendants waived the objection to the jurisdiction and entered a general appearance. It is true that this court is committed to that doctrine, and unless the petition presents some ground, at least plausible, for holding the objecting defendants jointly with other defendants properly served or in court, we would be compelled, under our former rulings, to sustain the jurisdiction; but the allegations above quoted of paragraph 6 of the petition charge that the Lincoln State Bank, in collusion with the objecting defendants, was threatening to take action against the plaintiff alone, in Lancaster county, whereby his alleged equitable rights of contribution from the other note-makers would be seriously endangered and plaintiff subjected to a large number of separate suits to obtain contribution. It therefore appears by this paragraph that one of plaintiff's claims to equitable relief is based upon confederation and collusion between several defendants, one of whom, the

bank, had appeared in court and thereby subjected itself to its jurisdiction.

Now, are we to understand counsel to claim that, for the purpose of establishing waiver, these allegations, on the face of the record, do not constitute a cause of action, but that, for the purpose of sustaining general equity jurisdiction over the case, they do? We hardly think plaintiff can be permitted to occupy these inconsistent positions. It must be presumed that these allegations were inserted in good faith, in the belief that they fortified the plaintiff's position, and he should not now be allowed to assert the contrary. The question whether or not a cause of action is stated is one which calls for the judgment of the court on a matter outside the question of jurisdiction, and it would be a dangerous proceeding to raise that question upon a special appearance; so, we think, for present purposes we must consider whether the objecting defendants are jointly touched by the claim, good or bad, of the plaintiff; and as the facts touching that claim are not apparent upon the face of the record, the right of the objecting defendants to raise the question of jurisdiction over their persons was not waived by failure to file a special appearance, but was properly raised by answer.

In *Stull Bros. v. Powell*, 70 Neb. 152, a joint liability was alleged in the petition against a resident and nonresident defendant, and it was held that the proper method of raising the question of jurisdiction was by answer, and, it appearing upon the trial that there was no joint liability, jurisdiction was denied. In *Bailey v. Chilton*, 106 Neb. 795, it was said that under the allegations of plaintiff's petition it was proper to join the defendants in the one action and to seek the relief prayed, but that upon the trial, plaintiff having failed to prove a joint liability against defendants, the objections to the jurisdiction should be sustained. And in *McNeny v. Campbell*, 81 Neb. 754, it was held: "The plaintiff in this case having shown no right of action against Carpenter (resident defendant), the district court for Web-

ster county obtained no jurisdiction of the defendants Burke & Campbell, and the action should have been dismissed."

The application of the above cases to the one at bar is found in the fact that no evidence whatever was produced by the plaintiff to sustain the allegations of paragraph 6 as to collusion of the bank and objecting defendants. It therefore appeared upon the·trial that no joint liability existed, and that jurisdiction of the persons of objecting defendants had not been obtained. These were the only allegations of the petition charging the objecting defendants jointly with any one, over the person of whom jurisdiction had been obtained by service in the county; this left the case against the lumber company and the Kimballs one for cancelation of the notes for fraud in their procurement— a question between groups A and B, on the one hand, and E, on the other; as between the plaintiff and the bank the issue of fraud could be tried without the presence of the objecting defendants. Suppose the only defendants were the bank and lumber company, neither being served in Custer county: No one would contend that the suit was properly brought; and in such case it seems that the entry of appearance by the bank, whether in collusion with plaintiff or not, could not operate as a waiver of the lumber company's privilege of being sued in the county of its residence. Had the bank been served in Custer county a different question might arise, as the case would then be brought within the terms of section 8570. We therefore hold that the present case is not controlled by cases where the want of jurisdiction appears upon the face of the record, and that the objections should have been sustained.

Cross-appellant (plaintiff) complains of the finding of the court in favor of Selleck and the dismissal of the case as to him. Plaintiff's case against Selleck is based upon the following letter which it is claimed in part induced the purchase of the stock:

"Lincoln, Neb. April 26, 1918.

"To Whom It May Concern:

"I take pleasure in stating that I have known Mr. Willard

Kimball of this city for many years, at least twenty years last past. During the most of the time he was the principal owner and manager of the University School of Music located in this city.

"Mr. Kimball in his management of this institution showed marked executive ability, and is a man recognized amongst the community here, as one of high integrity, of character and of unusual ability. He built up a strong institution and parted with it only because he felt that larger opportunities were offered him in other lines.

"Mr. Kimball is worthy of every confidence and full trust in whatever statements he may make regarding his business.

> "Yours truly, (Signed) W. A. Selleck,
> "Pres. Lincoln State Bank."

This letter was printed in a prospectus or pamphlet published by the lumber company. There is no evidence that Selleck knew of the publication, and he is not charged with any bad faith or collusion; he is sought to be held on the ground that the statements of the letter are false, and that he is therefore chargeable with the use made thereof by Willard Kimball. There is no evidence that the statements of fact in the letter are false, but liability is based upon the last paragraph. We think that this sentence was the expression of the writer's opinion, and unless fraudulently made, gives no cause of action. No man can know absolutely that another is "worthy of every confidence." He can only form an opinion on that subject. It is not a matter of which he may be presumed to speak from knowledge; it is not susceptible of knowledge. If the speaker has knowledge of *facts* which do not warrant the opinion, the expression of it would be fraudulent. All of the cases cited by appellant on this point present this feature or some false statement of fact. For instance, in *Einstein, Hirsch & Co. v. Marshall & Conley,* 58 Ala. 153, the statement was, "He is good for all he buys," considered as assertion of financial standing; *Addington v. Allen,* 11 Wend. (N. Y.) 374, "that

he was safely to be trusted and given credit," when in fact
he was indebted to the defendant in large amounts for which
judgments had been rendered and remained unpaid; *Kimball v. Comstock*, 14 Gray (Mass.) 508, that he was possessed of a large amount of property and entitled to credit;
*Foster v. Charles*, 6 Bing. (Eng.) 396, that he had an excellent connection and large business, when in fact he had
no connection and was in debt to the knowledge of defendant
giving the recommendation; *James v. Crosthwait*, 97 Ga.
673, defendant banker, being inquired of as to state of the
account of the company whose shares plaintiff was about
to purchase, refused to give the information, but referred
plaintiff to Lamar, "He will tell you just how it is," and
Lamar made false representations; there was evidence of
collusion between Lamar and the banker.

None of the statements of fact in this letter are shown
to be false, nor is there any evidence that Selleck was possessed of information that made his expression of opinion
fraudulent. The findings of the trial court are fully sustained and we adopt them. It is not now contended that
the bank is liable with Selleck.

We come now to the question of the jurisdiction of a court
of equity to grant the relief prayed; and, first, can the suit
be maintained as one to compel contribution as between
sureties? The parties to this controversy are the note-makers, as plaintiffs, *versus* the Bank. All the plaintiffs,
according to the allegations of the petition, are in same situation, viz., their notes had been procured by fraud and
they had a defense to them in the hands of the payee. If
the debt of the bank is less than the aggregate of the notes,
it would seem equitable that the loss to plaintiffs be apportioned between them, and this can best be accomplished by
a suit in equity, when the respective rights of all the parties
can be protected. While the obligation of the note-makers
to the lumber company in the first instance was primary,
when it is shown that a good defense exists to the notes and
the lumber company has placed them in the hands of an
innocent third party as security for its debt, the note-mak-

ers, by operation of law, occupy the position of sureties for the payment of that debt. They are possessed of the same rights as between themselves as though they became sureties by express contract. *Wayman v. Jones,* 58 Mo. App. 313. We think the case is not distinguishable in principle from *McBride v. Potter-Lovell Co.,* 169 Mass. 7. The statement of the case is contained in the syllabus as follows:

"A banker and broker who held the promissory notes of several of his customers for sale for their benefit fraudulently pledged them at different times as security for his own debt to a person who took them in good faith, for value and without notice, and who from time to time collected enough of these notes, as they fell due, to satisfy the debt of the pledgor, who had become insolvent. One of the makers of the notes demanded the return of his note by the pledgor before it had been pledged, and refused to pay it to the pledgee. Held, on a bill in equity for contribution, brought by one of the makers of the notes against the pledgor, the pledgee, and the other makers, that, all the notes being pledged as security for the same debt, the whole loss should be borne by all the makers in proportion to the amounts of the notes so pledged; that the demand for the return of his note by one of the makers was immaterial, and that the assignees in insolvency of the pledgor had no interest or duty in the case."

The notes in that case were given at different times by different parties, without any concert between them, and were all pledged by the payee to secure the same debt. At page 9 the court say:

"The various parties selected a common agent, and this agent used its power to place them all under a common liability, thus virtually making them all sureties for itself. It might be that under such circumstances the pledgee would prefer to hold one and exonerate another, and it would have power to do so in the first instance by proceeding to collect of one, but not of another. But where several different parties have thus been exposed to loss by the fraud of their common agent, it is more equitable that the burden

of the loss should be shared *pro rata*. Under such circumstances equality is equity, without respect to the time of the maturity of the notes. The demand by the North Star Boot and Shoe Company for the return of its note was also immaterial. It was no more fraudulent to pledge this note after such demand than it would have been to pledge it before a demand. All the notes being pledged as security for the same indebtedness, the whole loss in consequence thereof is to be borne by all the makers in proportion to the amounts of the notes so pledged. *Gould v. Central Trust Co.*, 6 Abb. N. C. 381; *New England Trust Co. v. New York Belting & Packing Co.* 166 Mass. 42, and cases there cited; *Wiggin v. Suffolk Ins. Co.*, 18 Pick. 145, 153; *Warner v. Morrison, 3 Allen,* 566; 1 Story, Eq. Jur. sec. 493."

It is attempted to distinguish this case on the ground that the fraud was committed by a "common agent," but the distinction is not perceived. Counsel argue: "In that case the notes were pledged by the makers thereof. Here the makers of the pledged notes did not agree to pay the secured debt, nor make a pledge of their notes to secure its payment. Hence, they did not become sureties of the lumber company." The assumption that in pledging the notes the payee acted as agent of the makers is unwarranted; he acted in fraud of their rights—outside his agency—and the makers did not thereby agree to pay the debt. We approve the case of *McBride v. Potter-Lovell Co., supra.*

It is objected that suit for contribution cannot be maintained until plaintiff has paid more than his share of the debt. This might be a good defense at law, but the equitable remedy is concurrent with the legal remedy where the latter would be incomplete, inadequate or doubtful. *Comstock v. Potter*, 191 Mich. 629. That payment in such case is not a condition precedent is shown by the case of *McBride v. Potter-Lovell Co., supra.* See, also, *Davis v. First Nat. Bank,* 86 Or. 474. The bank not having objected to the jurisdiction of the person, we think the case well brought for contribution, and it will not be necessary to further discuss other grounds of equity jurisdiction.

The defendant and cross-appellant, Logan, was excluded by the decree from sharing with other note-makers the benefits of equitable contribution, for the reason that he had not filed a cross-petition joining the others in praying for a cancelation of his note on the ground of fraud. The evidence on that subject was equally applicable to him as to the others, and the finding is sustained by the evidence. We think, in a proceeding of this kind, where relief is awarded on equitable principles, that all parties in a like situation should receive equal consideration and relief; and that the failure of Logan to join the others, under the circumstances, does not warrant the imposition of a penalty such as provided by the decree. The evidence warranting it, Logan should be treated the same as the others in like situation.

The findings and judgment of the district court are affirmed as to the bank and the note-makers, except as to Logan, who must be treated the same as the others, and is hereby granted leave, if he so desires, to file an amended answer and cross-petition in accordance with the proofs. Finding and judgment against Logan in favor of the lumber company and Willard Kimball is reversed. Judgment is affirmed as to defendants Selleck and George P. Kimball. As to Sarvis Lumber Company and Willard Kimball, judgment is reversed and the case dismissed.

The cause is remanded to the district court for entry of decree in conformity with this opinion.

JUDGMENT ACCORDINGLY.