E. A. EPP ET AL., APPELLEES, V. FEDERAL TRUST COMPANY
ET AL., APPELLANTS.

FILED JUNE 10, 1932.   No. 28009.

*Max V. Beghtol, Glen H. Foe* and *J. Lee Rankin,* for
appellants.

*F. L. Bollen* and *J. C. McReynolds, contra.*

Heard before GOSS, C. J., DEAN and EBERLY, JJ., and CHASE and LOVEL S. HASTINGS, District Judges.

HASTINGS, District Judge.

This is an action in equity brought by E. A. Epp and others, nonresidents of Lancaster county, on their own behalf and for others similarly situated, to enjoin the Federal Trust Company, the Wheat Growers Finance Company, corporations with their principal places of business in said county, and others, from collecting default judgments, from prosecuting pending suits, and from commencing other threatened suits in the justice court of E. G. Maggi or any other court in said county.

There is no conflict in the evidence. It is established that the plaintiffs and the others in whose behalf the action is brought are members of the Nebraska Wheat Growers Association, which name was changed later to that of the Midwest Grain Marketing Association. The Nebraska Wheat Growers Association was organized as a nonstock cooperative association under chapter 80, Laws 1925, now sections 24-1401 to 24-1414, Comp. St. 1929, to "promote, foster and encourage the business of marketing wheat cooperatively; to minimize speculation and waste in the production and marketing of wheat and wheat products; to establish wheat markets; to handle cooperatively and collectively the problems of wheat growers." To become a member of the association it was necessary to sign what is known as a "Standard Marketing Agreement," consisting of two pages of finely printed matter wherein the members agreed to market their wheat through said association. Attached to said marketing agreement was an application for membership in the association, and a membership note, by the terms of which the member agreed to pay $10 to the order of the association on or before July 15, 1929. All the marketing agreements, the applications for membership, and notes were in the same form.

About fourteen thousand persons engaged in raising wheat in Nebraska signed said marketing agreements, applications for membership and notes. For the purpose of providing money to pay the debts which the association would be required to incur before the membership notes became due and payable, the Wheat Growers Finance Company was incorporated September 14, 1928, with a capital stock of $50,000, and under a written agreement entered into between the association and the Wheat Growers Finance Company said finance company agreed to purchase all the contract membership notes obtained by the association for $7.50 each, and the association under said agreement agreed to assign and guarantee the payment of all such membership notes. The finance company, not having sufficient resources of its own to purchase all the membership notes, entered into a trust agreement with the Federal Trust Company, whereby the finance company was to issue its collateral trust gold notes, which the trust company was to negotiate for the finance company, and as security therefor were to sign and indorse to the trust company all the contracts and membership notes purchased by them. The trust agreement further provided that the trust property for the security of outstanding collateral trust gold notes should consist of membership contract notes for the payment of the principal, amounting in the aggregate to at least 120 per cent. of all outstanding collateral trust gold notes, and if at any time a deficiency in the trust property should occur, the finance company, without demand or other action upon the part of the trustee, should forthwith deposit with the trustee, to be held as part of the trust property, additional moneys or like membership notes to an aggregate amount sufficient to make up any such deficiency. The contract membership notes were also pledged with the trust company to secure payment of the costs and expenses of collection of such contract notes and of any sale thereof, including reasonable compensation to the trustee, its agents, attorneys and counsel,

and all other expenses, liabilities and advances made or incurred by the trustee under the trust agreement.

The trust agreement further provided that as the money was collected on the membership notes it be used in retiring the collateral trust gold notes of the finance company. The finance company issued its collateral trust gold notes in the sum of $29,000, and these were sold to different parties by the trust company.

These marketing agreements and notes were grouped in lots of about one hundred and for each such lot an assignment on a separate instrument was made by the wheat growers association to the finance company. The finance company, below this assignment, assigned and indorsed said notes in said lots and all substitutions thereof to the Federal Trust Company. In this manner the Federal Trust Company received from the finance company contracts and notes to the number of 10,156, amounting to $101,560. Prior to November 10, 1930, and before the commencement of this action, the trust company had collected membership notes to the amount of $54,635 and out of the amount so collected had paid all of the collateral trust gold notes, paid itself the amount due to it of $1,040 for negotiating the collateral trust gold notes, a fee of $400 as trustee, and advanced therefrom to its and the finance company's attorney for attorney's fees and costs in connection with the collection of membership notes the sum of $1,000. In addition thereto expenses incurred by the trust company had been paid. Furthermore, there had been paid a 40 per cent. dividend to the stockholders of the finance company in liquidation of their stock. On the date mentioned the Federal Trust Company had in its possession in banks the sum of $3,467.73 of money of the finance company held under the trust agreement. From November 10, 1930, up to the time of the trial of this action, the attorney for the trust company and the finance company had collected other membership notes to the amount of $5,532.89.

Suits were commenced on membership notes in the justice court of E. G. Maggi in Lancaster county by the Federal Trust Company as plaintiff against the members signing the different notes and the Wheat Growers Finance Company as an alleged indorser thereof, summons was issued and served upon the Wheat Growers Finance Company in Lancaster county, and upon the summons being returned by the Lancaster county sheriff without service upon the maker of the membership note, an alias summons was issued to the county of his residence and served upon him in that county. All summons thus served upon the Wheat Growers Finance Company were sent to its attorney, who was also attorney for the trust company, and the matter of looking after its interests was left to him. Prior to the commencement of this action 375 such suits had been commenced in that court and like service obtained on the makers of the contract notes sued upon. Between the commencement of this action and the trial hereof (no temporary injunction having been granted) on April 15, 1931, 211 additional suits had been commenced, making in all 586 suits that had been commenced prior to the date of the trial. After this action was commenced some of those sued paid, default judgments were rendered in some cases, and in many others special appearances were filed, but no ruling had been had thereon. At the time of the trial there were in the hands of the attorney for the trust company and the finance company for collection nearly 3,000 membership notes upon which suit was being threatened.

Plaintiff's petition, in substance, set out the foregoing facts. The allegations of the petition, so far as necessary for a determination of the questions involved, are: That the action is one of common and general interest to many persons, and the parties plaintiff are numerous, and that it was impractical to bring all persons interested before the court as plaintiffs, and that the plaintiffs bring the action in their own behalf and all other persons similarly situated and interested; that the many

actions brought in the justice court of E. G. Maggi of Lancaster county on the membership notes, in which the Wheat Growers Finance Company was made a party defendant with the members signing said several notes, was for the sole purpose of giving the court the right to issue an alias summons to a foreign county to be served upon each of the signers of the membership notes, defendants in said actions; that the Wheat Growers Finance Company had no interest in said actions adverse to that of plaintiffs and was not a *bona fide* codefendant in said actions.

Several alleged defenses to said membership notes, common to all of the plaintiffs, are alleged. It was further alleged that plaintiffs had no adequate remedy at law and were about to suffer irreparable injury on account thereof. Plaintiffs prayed that the defendants, the Federal Trust Company and the Wheat Growers Finance Company, be permanently enjoined from prosecuting the actions pending on said membership notes in the justice court of Lancaster county and from further bringing any such actions against nonresident makers in that court or any other court in said county.

The defendant, Federal Trust Company, answered denying the allegations of plaintiff's petition, alleged that they had an adequate remedy at law; that there was no community of interest between plaintiffs; and that the notes sued upon were assigned and indorsed to it by the Wheat Growers Finance Company prior to July 1, 1929, for full consideration and without notice of any defect therein. The defendant, the Wheat Growers Finance Company, answered denying that it had any interest whatever in said membership notes.

The trial court found generally for plaintiffs except those who had allowed default judgments to be taken against them and as to such found for the defendants. The action was dismissed by the court as to all defendants except the Federal Trust Company and the Wheat Growers Finance Company. The court found that the

Federal Trust Company was a mere trustee of the Wheat Growers Finance Company, and that the finance company was not liable or indebted to the Federal Trust Company upon the written assignments of said standard marketing agreements or otherwise; that said Wheat Growers Finance Company was not a *bona fide* defendant and that said actions were not rightfully begun in Lancaster county and did not authorize an alias summons to be issued or served on the several signers of said membership notes in the county of their residence, and that said justice court obtained no jurisdiction over defendants so served by reason therof. A permanent injunction was granted against the defendants, Federal Trust Company and the Wheat Growers Finance Company, as prayed for in plaintiffs' petition.

Nowhere in their briefs do counsel for appellants contend or even suggest that the actions commenced by the Federal Trust Company on the membership notes by joining the Wheat Growers Finance Company as party defendant with appellees (defendants in such actions) were rightly brought in the justice court in Lancaster county so that an alias summons might be issued in each of said causes and served upon appellees in a foreign county. It is not contended that the findings of the trial court finding otherwise are erroneous. We have repeatedly held: "The test for determining whether an action is rightly brought in one county against the defendant found and served therein, so that others made defendants thereto may be served in a foreign county, is whether the defendant served in the county in which the action is brought is a *bona fide* defendant to that action—whether his interest in the action and the result thereof is adverse to that of the plaintiff." *Barry v. Wachosky*, 57 Neb. 534. See *Dunn v. Haines*, 17 Neb. 560; *Cobbey v. Wright*, 23 Neb. 250; *Hanna v. Emerson*, 45 Neb. 708; *Miller v. Meeker*, 54 Neb. 452; *Goldstein v. Fred Krug Brewing Co.*, 62 Neb. 728; *Stewart v. Rosengren*, 66 Neb. 445; *Ayres v. West*, 86 Neb. 297; *Vian v. Hilberg*, 111

Neb. 232; *Smith v. Atlas Refining Corporation,* 112 Neb. 6; *First Bank of Ulysses v. Warren,* 113 Neb. 361. The facts in this case establish beyond controversy that the Wheat Growers Finance Company had no interest in the suits commenced in the justice court of Lancaster county adverse to that of the Federal Trust Company, plaintiff in such actions, and that it was not a *bona fide* defendant therein, but was joined as defendant in each of said causes for the sole purpose of furnishing a basis for the issuing of an alias summons in each of said actions to be served upon each of the other defendants in such actions in another county. By such service said court acquired no jurisdiction over the parties so served.

The actions at law not having been rightfully brought in Lancaster county, appellees base their right to the injunctive relief decreed by the trial court upon three grounds, to wit: To prevent abuse of process; no adequate remedy at law; and to prevent a multiplicity of suits. One of the main reasons urged by counsel for appellants why the decree of the trial court cannot be sustained is that there is no evidence showing that appellees have a meritorious defense, common to all, to the membership notes sued upon. While several defenses are alleged, common to all parties plaintiff, there is no evidence proving or tending to prove any such defenses. This is conceded by counsel for the appellees. If the appellees are required to prove a meritorious defense to the actions at law, then it follows that injunctive relief should not have been granted and makes unnecessary the consideration of any of the other questions involved. In regard to this contention counsel for appellees state in their brief: "We plead and proved a common defense to every pending and threatened suit, to wit: That the justice court of E. G. Maggi of Lancaster county had not obtained and could not obtain by alias summons jurisdiction over the persons of the plaintiffs. * * * We are not asking equity to relieve us from liability on the so-called applications for membership. We are merely

asking equity to relieve us from being sued in a county where we have never been lawfully summoned." We have uniformly held that, where a judgment at law has been rendered by default, which is void for want of jurisdiction over the person of the defendant, such defendant is not entitled to an injunction to restrain the enforcement of such judgment, unless he makes it appear both from his pleadings and proof that he has a meritorious defense to the cause of action on which the judgment is based. *Braun v. Quinn*, 112 Neb. 485; *Langley v. Ashe*, 38 Neb. 53; *Norwegian Plow Co. v. Bollman*, 47 Neb. 186; *Bankers Life Ins. Co. v. Robbins*, 53 Neb. 44; *Cleland v. Hamilton Loan & Trust Co.*, 55 Neb. 13.

Appellees contend that the rule announced in those cases does not apply to the instant case. The argument made by able counsel for appellees is persuasive, but not convincing. We think the rule announced applies with equal or greater force to the present case. If appellees have no meritorious defense to the notes sued upon, then it is immaterial to them where such actions are brought. Without a meritorious defense they will not suffer any substantial injury therefrom. If appellees have no such defense, then the commencement of the actions in the justice court in Lancaster county would simply be an attempt to deprive them of the naked legal right to have the actions brought in the county of their residence or where they might be lawfully summoned. Such legal right becomes valuable only when there is a meritorious defense to an action. Then the litigant by being required to go from the county of his residence to another county to interpose a good defense may be put to inconvenience, unnecessary costs and expense for which he would have no redress and thereby suffer substantial injury. Where there is no defense to the cause of action, the wrongful bringing of such an action in a county other than the county of the residence of such defendant is a mere technical wrong which it is not the province of equity to correct. The party invoking its aid must show some sub-

stantial injury. If appellees have no meritorious defense or defenses common to all of them in all of said actions, then it would be useless for equity to assume jurisdiction and grant injunctive relief.

In the case of *Jones v. Harris*, 90 Ark. 51, it was held: "A defendant in numerous actions at law to enforce a primary liability created by statute who asserts no defense to the actions cannot sue in equity to enjoin the actions to prevent a multiplicity of suits." (117 S. W. 1077.) In the opinion it is said: "Appellees also invoke the principle announced by some authorities that a court of equity will enjoin the prosecution of numerous actions arising out of the same transaction in order to prevent a multiplicity of suits. Two cases of this sort have been brought to our attention. * * * In both of those cases the defendants in the actions at law asserted in their respective bills in equity valid defenses, and claimed the right to make defense without being subjected to the costs and expenses of a multiplicity of suits. In the present case, however, appellee Gibbs asserts no defense whatever to the actions at law. Without pausing to consider whether, under the state of facts set forth in the cases just cited, we would uphold the right to enjoin suits at law, we have no hesitancy in saying that in a case like the present one, where no defense at all is asserted, the principle cannot be invoked to call into action the jurisdiction of a court of equity."

We think that case correctly states the rule that should prevail. In that case no defense was alleged. In this case defenses were alleged, but no proof offered tending to sustain any of them.

If the appellees have no meritorious defense to the actions at law, then those who are litigiously inclined and desire to question, individually, the jurisdiction of the justice court have an adequate remedy at law by appearing specially and objecting to the jurisdiction of the court, although, if successful, the result may not be beneficial.

It is not likely, however, in view of this decision, that the justice court will continue to exercise jurisdiction in the pending cases, where jurisdiction is questioned, nor that said court or any other court in said county will in any action so wrongfully brought and on like service entertain jurisdiction when attacked; nor that the plaintiff in such actions will press for judgment therein or commence other similar actions or seek to obtain jurisdiction over nonresident defendants on like service.

There being no evidence proving or tending to prove a meritorious defense to the actions at law, common to all the appellees, equity will not assume jurisdiction to grant injunctive relief. The decree permitting such relief cannot be sustained for the reasons stated. To hold otherwise would be to disregard a well-established principle of equity jurisprudence. This we will not do, although the commencement of the actions at law in the justice court of Lancaster county, under the circumstances disclosed by the record, is disapproved. Whether appellees would have been entitled to such relief to avoid a multiplicity of suits, if there was proof of a common defense, we do not feel called upon to decide. To determine that question now we would be compelled to assume that appellees have evidence to establish such defense. A discussion thereof on the assumption a valid defense exists would be purely academic. We do not want to be understood as holding that on a retrial an injunction should not be granted if, in addition to the record before us, evidence is introduced proving or tending to prove a common defense to the actions at law.

The judgment is reversed and the cause remanded for a new trial.

REVERSED.