## MYERS v. BROWN et al.

(Supreme Court, Appellate Division, First Department. February 3, 1911.)

1. REFERENCE (§ 58*)—AMENDMENT—LEAVE TO AMEND — AUTHORITY OF REF-
EREE.

Where a complaint alleged that a bank, having to its credit on ac-
count with defendant a sum of money, ordered them to pay on satis-
factory identification to B. at a bank in Tokio, Japan, and that defend-
ant undertook to make the payment, but never paid the sum to B. at
the Tokio bank or at any other place, the referee before whom the case
was tried had no power, 3½ months after the evidence had been finally
closed and a month after the final submission of briefs, to permit an
amendment of the complaint to allege that defendant agreed to instruct
the bank at Tokio to pay B. upon satisfactory identification the sum
named, and that the defendant did not instruct the bank at Tokio to pay
B. upon satisfactory identification, and neither defendant nor the bank
at Tokio ever paid B. the sum named.·

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 89, 90; Dec.
Dig. § 58.*]

2. BANKS AND BANKING (§ 227*)—ACTIONS—EVIDENCE.

Where a complaint, for failure to pay a certain sum on the order of
plaintiff's assignor to a certain person at a bank in Tokio, is amended to
allege that the defendant agreed to instruct the bank at Tokio to pay
the sum to the designated person upon satisfactory identification, and
that they did not instruct the Tokio bank to pay upon satisfactory iden-
tification, and neither the defendant nor the Tokio bank ever paid the
sum, it is error to refuse defendant an opportunity to supply evidence
from bankers in Japan whether any different identification would have
been required, if the words "upon satisfactory identification" had been
inserted in the direction to the Tokio bank.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 227.*]

3. BANKS AND BANKING (§ 188½*)—AGENCY.

Where a Denver bank directed defendant to pay a sum of money to a
bank at Tokio, Japan, for the credit of a certain person, the Denver bank
chose the Tokio bank as its agent to make the payment.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. §
188½.*]

4. BANKS AND BANKING (§ 188½*)—DRAFTS—CONSTRUCTION.

Where a Denver bank directed defendant to instruct a bank at Tokio,
Japan, to make a payment "upon satisfactory identification," the words
quoted do not add anything to the ordinary requirements of a banker
and their omission from the instruction to the Tokio bank does not render
the defendant liable for the sum named on payment to the wrong per-
son by the Tokio bank.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. §
188½.*]

Appeal from Judgment on Report of Referee.·

Action by Jesse Myers against John Crosby Brown and others.
From a judgment entered on the report of a referee, defendants ap-
peal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, .
MILLER, and DOWLING, JJ.

Whitridge, Butler & Rice (Edwin T. Rice, of counsel), for ap-
pellants.

Underwood, Van Vorst & Hoyt (J. Markham Marshall, of coun-
sel), for respondent.·

---

CLARKE, J.   Plaintiff sues on an assigned claim of the First National Bank of Denver. Defendants are copartners under the name of Brown Bros. & Co., doing business as bankers in the city of New York. In April, 1902, Mr. James J. Brown had an account with the First National Bank of Denver. At that time he was traveling in Japan. A few days before the 19th of April, John F. Campion, a friend of Mr. Brown's at Denver, received a cablegram signed "Brown" asking for the telegraphic transmissal of $5,000, and some days thereafter a second cablegram, "Nothing arrived. Investigate." He took these messages to the bank, which on the 19th of April, telegraphed to the defendants as follows:

"Pay $5,000 to Yokohama Specie Bank, Tokio, Japan, by telegram for credit of J. J. Brown, upon satisfactory identification, and attach much importance to mental condition of payee. The importance of this cannot be overestimated."

And at the same time sent a letter of confirmation, and stating in addition:

"We do not wish to impose any hardship upon your Tokio correspondents in making this payment, but Mr. Brown for several years past has been in a most unfortunate state of health and mental condition, and we trust that your correspondents will use their best judgment in making the payment."

The regular correspondent of Brown Bros. & Co. in Tokio at that time was the Hong Kong & Shanghai Banking Corporation, and, in cases of transfer of money by cable to Tokio, where no special instructions were given by the remitter of the funds directing through what bank said transfer should be made, such transfer would have been made by the defendants through the said corporation.

Upon receipt of the telegram hereinbefore quoted, a representative of the defendants went to the office of the New York agent of the Yokohama Specie Bank, exhibited the telegram as received from the Denver bank, and asked said agency to make this telegraphic transfer. The person there in charge said they would not make it with any conditions. Thereupon the defendants telegraphed to the Denver bank on April 21st:

"Refer to your telegraph of 19th. Will pay on identification, but will take no responsibility concerning mental condition. Answer."

The Denver bank immediately replied:

"Refer to your telegram 21st. We do not require [you] accept responsibility, but if party is plainly unfit to transact business, do not pay. Merely ask your correspondent to use best judgment and act accordingly."

This message was taken by defendants' representative to the New York agency of the Yokohama Specie Bank and after a conference this telegram was sent to the Denver bank, dated April 22d:

"Our correspondents absolutely refuse make Tokio payment with any conditions attached. Instruct."

The Denver bank answered on the same day:

"Refer to your telegram of the 22d. Instruct Tokio by telegraph to make upon satisfactory identification."

This last message was taken to the New York agency of the Yokohama Specie Bank, and an order was given to make the payment requested, and they were told to make the payment upon identification. That agency had a private cipher code which was used between its branches, and a telegram was sent by such code in Japanese to its branch in Tokio on the 24th of April, reading:

"Telegraphic transfer number two, less than ten thousand pay to J. J. Brown the sum of yen 10,000."

Mr. James J. Brown of Denver testified that, while he was in Japan in April, 1902, he had not telegraphed for money or authorized any one to do so for him; that he had not received any moneys from the Yokohama Specie Bank at Tokio, and being shown' the written receipt reading, "Received of the Yokohama Specie Bank, Limited, the sum of ten thousand—being amount of telegraphic transfer as advised by New York, in our favor, Y–10,000, J. J. Brown," testified that the signature was not in his handwriting, but that he recognized it as having been written by one Harry Silverberg whom he had met while in Japan, under an assumed name. He also testified that Silverberg had made a day's excursion with him, had seen him a number of times, and had attempted to borrow money from him. The defendants having refused payment upon demand made by the First National Bank of Denver, the claim was assigned to this plaintiff, who commenced this suit in 1906, and it was duly referred for trial to a referee.

The complaint alleges that on or about April 23, 1902, the First National Bank of Denver had to its credit, on account with the defendants, $5,000; that on said day said bank ordered and directed the defendants to pay, upon satisfactory identification, said sum of $5,000 to a certain J. J. Brown, at the Yokohama Specie Bank, at its office in the city of Tokio, Japan, and that the defendants undertook and agreed, for a valuable consideration, to make said payment in manner and form as hereinbefore stated; that the defendants never paid the said sum of $5,000 to said J. J. Brown at the Yokohama Specie Bank, at its office in Tokio, empire of Japan, or at any other place; that on or about the 23d of February, 1903, said bank duly demanded from the defendants the said sum of $5,000, but the defendants have failed and refused to pay the same.

After all the evidence had been taken, a large amount under commissions issued to Denver, Tokio, and Dalney, and 3½ months after the evidence had been finally closed before the referee, and a month after the final submission of briefs, plaintiff moved before the referee on two days' notice of motion, for leave to amend the complaint. This application was summarily granted, the defendants were refused an opportunity to plead to the amended complaint or to introduce any further evidence, and the referee's report directing judgment for plaintiff was signed a few days thereafter. The amendment was as follows (in substitution of the fourth and fifth paragraphs of the original complaint) :

"Fourth. That on or about April 23, 1902, Brown Bros. agreed to instruct the Yokohama Specie Bank, at Tokio, Japan, to pay J. J. Brown, upon satis-

factory identification, $5,000. Fifth. That the defendants did not instruct the Yokohama Spécie Bank, at Tokio, Japan, to pay to the said J. J. Brown, at the said Yokohama Specie Bank, Tokio, Japan, or at any other place, upon satisfactory identification, the said sum of $5,000, and that neither the defendants nor the Yokohama Specie Bank ever paid to the said J. J. Brown the said sum of $5,000."

The referee embodied in his findings of fact the exact words of the amendment to the complaint so permitted to be made by him. In his opinion he states:

"These written communications make the contract, and we can arrive at but one conclusion as to what such contract was, and find it to be that Brown Bros. agreed to instruct the Yokohama Specie Bank at Tokio, Japan, by telegraph to pay J. J. Brown upon satisfactory identification $5,000. * * * It is undisputed, however, that the cable which actually transmitted the money to Japan, and which was sent by the New York Branch of the Yokohama Specie Bank, did not contain the instructions given by the First National Bank of Denver, in that the words 'upon satisfactory identification' were omitted."

He further states:

"Whether or not it was because the New York Branch of the Yokohama Specie Bank had not been instructed to use the omitted words 'upon satisfactory identification' by Brown Bros. or because of its own negligence that those words were omitted, is unnecessary now to decide. The fact remains undisputed that these words of instruction were not communicated to Tokio as required by the terms of the contract alleged in the complaint as amended, and hence it follows that Brown Bros. failed in their agreement which the evidence shows they undertook to perform for a valuable consideration."

It therefore appears that the judgment in this case is based upon the amended complaint, and rests solely upon the finding of the breach of the alleged specific contract to instruct the Yokohama Specie Bank to pay upon satisfactory identification. In my opinion the radical change in the complaint, permitted over objection, at the time and under the circumstances disclosed, was without the power of the referee. It constituted one of those traps condemned many times by the courts, where a defendant comes into court to try issues carefully defined in pleadings, and finds himself cast in judgment upon entirely different issues. Wright v. Delafield, 25 N. Y. 266; Southwick v. First Nat. Bank of Memphis, 84 N. Y. 420; Romeyn v. Sickles, 108 N. Y. 650, 15 N. E. 698; Freeman v. Grant, 132 N. Y. 22, 30 N. E. 247; Gordon v. Ellenville & Kingston R. R. Co., 195 N. Y. 137, 88 N. E. 14; Keefe v. Lee, 197 N. Y. 68, 90 N. E. 344, 27 L. R. A. (N. S.) 837. This is especially the case here because evidence had been taken in Japan, under the allegations of the original complaint, touching the law of Japan governing the execution of the contract, the payment having been ordered to be made and having been made in that empire, and the defendants strenuously requested an opportunity to supply evidence from bankers whether any other or different identification would have been required if the words upon which stress is laid had been inserted in the telegram than was had, and from lawyers whether under the law of Japan the insertion of those words would have altered the legal status of the parties. In other words, the case has been twisted by the action of the plain-

tiff and the referee from one brought upon a contract to be performed in Japan into a contract made and breached in New York. Even assuming that the amendment was permissible, it was a fatal error to refuse an opportunity to produce further evidence to meet the new issue presented by the amendment.

In my opinion, by the telegram and letters, plaintiff's assignor, the Denver bank, chose the Yokohama Specie Bank at Tokio as its agent to make the payment and directed the defendants to pay to said bank the $5,000 with instructions to the Yokohama Bank to pay J. J. Brown. I do not think the words "satisfactory identification," the omission of which is held to warrant the recovery, add anything to the ordinary requirements of a banker. By general commercial law the paying bank is required to satisfactorily identify the payee. That duty was on the Yokohama Specie Bank who dealt with the payee, not upon the defendants in New York who did not and could not deal with him. They did all that they had to do in transmitting the money. The situation which faced the Yokohama bank was this: No identification of J. J. Brown was made by the plaintiff's assignor in any way, nor was it indicated how he was to be satisfactorily identified. It was not even said that he was of Denver; neither his age, physical characteristics, signature, the party with whom he was traveling, nor any other information was transmitted to the defendants or to the bank at Tokio. Two days before the Yokohama bank received any instructions from New York, a man had appeared asking if a telegraphic remittance of $5,000 had been received from New York for which he had telegraphed to his friend in that city. He gave his name as J. J. Brown; said that he was stopping at the Metropole Hotel, and wrote his name and address on a slip of paper, and asked to be informed when the telegraphic remittance arrived. The officer of the bank saw that he was an American, having all the appearance of a tourist. The bank telephoned to the hotel, and found that J. J. Brown was duly registered there. He called the next day again, and was again told that nothing had been received. The next day, April 25th, the order was received from New York, the bank telephoned to the hotel, but found that "Brown" had gone to Yokohama. The next day he demanded payment, and was paid, upon his giving a receipt, receiving a portion of the amount in gold, a further portion in a draft, and leaving the balance on deposit, for which he received a certificate. Shortly thereafter he drew the remainder. As testified by Takeo Kikuchi, a member of the House of Peers, President of the Tokio Bar, and President of the Central University (Law School), under the laws of Japan the Yokohama Specie Bank having acted in good faith and paid under the circumstances disclosed, it was a valid payment, and the bank was relieved from responsibility.

The judgment should be reversed and a new trial ordered before a new referee, with costs to the appellants to abide the event. All concur.