**AACHEN & MUNICH FIRE INS. CO. v. GUARANTY TRUST CO. OF NEW YORK.**

Circuit Court of Appeals, Second Circuit. July 17, 1928.

No. 247.

1. War ⬤⟞12—Recovery of sum which defendant failed to remit to Germany held not barred on ground of prior seizure by Alien Property Custodian (50 USCA Appendix § 12).

Contention that plaintiff had no cause of action on defendant's failure either to transmit money by wireless to plaintiff's home office in Germany or to pay over such money to plaintiff as thereafter demanded because of prior seizure by Alien Property Custodian, *held* without merit, in view of amendment to the Trading with the Enemy Act of March 28, 1918 (50 USCA Appendix § 12), and letter of Alien Property Custodian expressly disclaiming any interest in sum of money sought to be recovered.

2. Limitation of actions ⬤⟞46(2)—Recovery of money which defendant failed to remit to Germany held not barred by limitations on theory of breach of contract to establish foreign credit.

Where there was no unconditional promise by trust company to establish a foreign credit by remitting money to plaintiff's home office in Germany, and condition upon which trust company agreed to establish credit never happened by reason of stoppage of its cables, *held* that no breach of contract to establish a foreign credit had occurred, and hence action for recovery of money, which defendant failed to remit to Germany by wireless, was not barred by statute of limitations.

3. Banks and banking ⬤⟞188½—Complaint held to state cause of action for balance of account which defendant failed to remit to Germany.

Complaint, alleging breach by defendant of agreement to transmit money by wireless from plaintiff's account in defendant bank to plaintiff's home office in Germany, and that defendant failed to carry out terms of agreement, and alleging service on defendant of written notice of rescission and demand and failure to pay, *held* to state a sufficient cause of action to recover balance of account, since it showed that plaintiff sought to recover balance which defendant had refused to pay, and bringing of action constituted a sufficient demand.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Aachen & Munich Fire Insurance Company against the Guaranty Trust Company of New York to recover the sum of $43,137.72, which defendant had failed either to transmit by wireless to plaintiff as directed or to pay over to plaintiff as thereafter demanded. Judgment for defendant (24 F. [2d] 465), and plaintiff brings error. Reversed.

See, also, 24 F.(2d) 463.

On March 26, 1917, and prior thereto, the Aachen & Munich Fire Insurance Company, in addition to its general bank account, maintained in the Guaranty Trust Company an account known as the "special foreign account." This account was used by the United States branch of the insurance company for remittances to the home office at Aachen, Germany.

On March 26, 1917, the United States manager of the insurance company wrote to

the Guaranty Trust Company, and that company received on the same date, a letter saying:

"Please remit to the Aachen & Munich Fire Insurance Company at Aachen, Germany, to-day by wireless, 250,000 marks at .69 or better, and charge the equivalent against the special foreign account of the company."

On March 26, 1917, the Guaranty Trust Company acknowledged the order contained in the letter of March 26, in a letter to the insurance company:

"To Aachen & Munich Fire Ins. Co., 80 Maiden Lane: In making a cable transfer it is fully understood and agreed that no liability shall attach to us nor to our correspondents for any loss or damage in consequence of any delay or mistake in transmitting the message, or for any cause beyond our control.
"Aachen.

"Cable transfer. Payable to Aachen & Munich Fire Ins. Co., on account of yourselves:

| | |
|---|---|
| Marks 250,000, at 69 | $43,125.00 |
| Cable charges | 12.72 |
| Total | $43,137.72 |

"E. L. R.

"Payment will be effected by Berliner Handelsgesellschaft, Berlin.

"Owing to censorship and other conditions of war causing delays beyond our control, this company reiterates its declination of responsibility in the matter of delays and miscarriages, and sends all cable orders or repetitions thereof at the clients' costs and risk in change of rates or as to any other damage whatsoever sustained by the client.
"Guaranty Trust Company of New York,
"W. P. Edmund, V. P."

On March 26, 1917, the Guaranty Trust Company drew up a cable for wireless transmission to Berliner Handelsgesellschaft, in which they directed the latter bank to telegraph "Aachen & Munich Fire Insurance Company, Aachen account, * * * New York 250,000 marks." On the same date the Guaranty Trust Company delivered to the Western Union Telegraph Company for transmission to the Sayville wireless station the above message, which the Western Union forwarded to the wireless station. The trust company learned of the interception of their outgoing radiogram some time after this country had joined the Allies in the war against Germany, but the plaintiff had no knowledge that the order for the remittance had not been executed until some time in August, 1922. On November 23, 1922, the insurance company wrote the Guaranty Trust Company a letter stating that, "as the order to effect the transfer in question appears to be still open, we beg to formally withdraw same."

After the passage of the Trading with the Enemy Act, the amount due in the account of the insurance company with the Guaranty Trust Company was paid over to the Alien Property Custodian, with the exception of the $43,137.72 involved in the above radio transfer. The Alien Property Custodian, on November 18, 1918, made a demand, which was served on plaintiff's manager, for the transfer and payment of all assets of the plaintiff. The defendant had already reported to the Alien Property Custodian, on or about December 13, 1917, the various balances to the credit of plaintiff, with the exception of the $43,137.72, which was doubtless not reported upon the theory that it was not due to the enemy alien.

On March 9, 1924, the insurance company brought this action against the Guaranty Trust Company. The complaint alleged that on or about March 26, 1917, the defendant, at the request of the plaintiff, agreed to transmit to it at Aachen, Germany, by wireless, 250,000 marks at .69 or better from the funds of the plaintiff on deposit with the defendant in New York, and that the defendant, on or about that date, charged against the funds of the plaintiff on deposit with the defendant at New York $43,137.72, of which $43,125, was represented by the defendant to be the equivalent of the 250,000 marks transmitted, and $12.72 was a charge made for the expense of transmission; that the defendant failed to carry out the terms of this agreement and did not transmit to the plaintiff at Aachen, Germany, or otherwise, the said $43,125, or any part thereof, which the defendant had received from the plaintiff for transmission; that the plaintiff did not learn of defendant's failure to perform its aforesaid agreement within a reasonable time, or until on or about October, 1922, when for the first time, after the termination of a state of war between the United States and Germany, the plaintiff was placed in a position to ascertain the disposition of the funds which it had formerly had on deposit with the defendant, whereupon the plaintiff served upon defendant written notice of rescission dated November 23, 1922; that prior to the commencement of the action the plaintiff duly demanded of the defendant that it return to the plaintiff the sum of $43,137.72, with interest, but the defendant refused to

return the same, and now retains it, to the damage of the plaintiff.

To this cause of action the defendant interposed the defense "that the alleged cause of action set forth in the complaint did not accrue within six years next preceding the commencement of this action."

Section 27 of the Civil Practice Act of the state of New York provides:

"*Effect of War on Right of Alien.* Where a person· is disabled to sue in the courts of the State by reason of either party being an alien subject or citizen of a country at war with the United States, the time of the continuance of the disability is not a part of the time limited for the commencement of the action."

The limitation occasioned by war is set forth in section 28 of the Civil Practice Act:

"Sec. 28. *Disability Must Exist When Right Accrues.* A person cannot avail himself of a disability unless it existed when his right of action or of entry accrued."

Upon a motion for summary judgment, the District Court said: "The cause of action accrued on March 26, or within a reasonable time thereafter. If the period from March 26, 1917, to April 6, 1917, when a state of war was declared, was a reasonable time, the cause of action then accrued and the statute began to run. In either event, the defense of the statute of limitations raises a substantial issue."

The trial court said:

"Assuming the contract to remit marks by wireless on March 26, 1917, not to have been broken until a reasonable time after that date, did the breach occur before commencement of war on April 6, 1917? A reasonable time within which to execute the transfer of credit certainly expired before war commenced. To require ten days for the transfer of credit by wireless would be quite unreasonable, and plaintiff's counsel does not even argue the point. I am therefore constrained by the law of the case to sustain the statutory bar as a defense to the action."

A judgment was directed dismissing the complaint, upon the ground that the contract was broken by the defendant on March 26, 1917, or within a reasonable time thereafter; that a reasonable time for the performance of the contract expired before April 6, 1917, when a state of war between the United States and Germany was declared; that the cause of action, if any, accrued prior to April 6, 1917; and that the six-year statute of limitations was not suspended during the war, because the plaintiff was not under any disability at the time the cause of action, if any, accrued.

Plaintiff sued out a writ of error, assigning as error, among other things, the finding of the court that the statute of limitations was not suspended during the period of war between the United States and Germany, and the refusal to direct judgment in favor of the plaintiff for the relief demanded in the complaint.

Hartwell Cabell, of New York City (James M. Lown, Blaine F. Sturgis, and Joseph S. Catalano, all of New York City, of counsel), for plaintiff in error.

Stetson, Jennings, Russell & Davis, of New York City (William C. Cannon, David E. Hudson, and Ralph M. Carson, all of New York City, of counsel), for defendant in error.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). Upon the foregoing facts three contentions may be made on behalf of the defendant:

(1) That the plaintiff is vested with no right of action, because of the seizure of the claim in question by the Alien Property Custodian on November 18, 1918.

(2) That the cause of action set forth in the complaint is for the breach of a contract which occurred before the plaintiff was under any disability because of the war; that by reason of section 28 of the New York Civil Practice Act it could not avail itself of any disability caused by the war, inasmuch as such disability did not exist when the right of action accrued, and that the claim was barred by the statute because more than six years had elapsed between the date of the breach and the time the action was brought on February 9, 1924.

(3) That, if the plaintiff seeks to recover upon any other theory than for the breach of a contract to establish a credit in Germany, recovery may not be had under the pleadings in the case.

[1] In respect to the contention that the plaintiff has no cause of action by reason of the prior seizure by the Alien Property Custodian, it would seem to be a complete answer that the latter official, by letter to the defendant in October, 1923, expressly disclaimed any interest in the sum of money sought to be recovered herein and said: "A careful examination of our records discloses the fact that this sum was never reported to this office, and was, therefore, not demanded.

I am advised that I have, in law, no right, title, and interest in and to these funds at this time, and you are, therefore, authorized to make settlement with Mr. Kelsey direct."

The amendment to the Trading with the Enemy Act of March 28, 1918 (50 USCA Appendix § 12), gave the Alien Property Custodian, under such rules and regulations as the President should prescribe, " * * * power to manage such property and to do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof."

This court broadly construed the powers of the Alien Property Custodian in Sutherland v. Guaranty Trust Co., 11 F.(2d) at page 698, and held that he was authorized "to qualify or limit any * * * demand in such manner and to such extent as he might in any case see fit." There would, therefore, seem to be no right left in the Alien Property Custodian, if one ever existed.

[2] The contention that the cause of action for breach of a contract to establish a foreign credit is barred by the statute of limitations must fail, because there was no unconditional promise to establish such a credit, and the condition upon which the defendant agreed to establish the credit never happened.

The letter of the plaintiff to the trust company on March 26, 1917, which said: "Please remit to the Aachen & Munich Fire Insurance Company at Aachen, Germany, to-day, by wireless, 250,000 marks at .69 or better, and charge the equivalent against the special foreign account of the company" —much resembled a draft. It only authorized a final charge if the remittance was made, and the charge was to be made to an account used by the plaintiff for foreign transactions, but involving, like any other bank account, a mere relation of debtor and creditor.

The trust company, on the same date, replied by saying: "In making a cable transfer it is fully understood and agreed that no liability shall attach to us and our correspondents for any loss or damage in consequence of any delay or mistake in transmitting the message, or for any cause beyond our control."

Thus it appears that the defendant carefully guarded itself against any absolute liability, and undertook in substance merely to make a remittance if no cause beyond its control intervened. To be sure, it did charge the plaintiff's account on delivering the cable; but that debit was a mere matter of bookkeeping, and did not alter the fact that the war cut off communication by cable, and the condition of free communication upon which the obligation to make the transfer rested never existed. In such circumstances, while the debit of $43,137.72, being a mere temporary and tentative entry, should as a matter of bookkeeping have been reversed when the trust company learned that no transfer had been made, there was never in fact a valid charge, and the account was essentially as though nothing had taken place. After the trust company had failed through stoppage of its cables to make the transfer, the plaintiff was in the position of an ordinary depositor, and on learning for the first time in 1922 of the failure to establish the credit, its manager wrote to the trust company that the plaintiff wished no remittances to be made, and said: "As the order to effect the transfer in question seems to be still open we beg to formally withdraw same."

[3] Up to that time there had been no breach of any contract, so that the vexed question of the statute of limitation need not be discussed. The bringing of this action to recover the balance of account was a sufficient demand, and unless there be a defect of pleading the plaintiff was entitled to recover the same, with trust company interest from the time when the defendant first knew of the interception of its cables until the date when payment was demanded, and with interest at 6 per cent. from the latter date until the time of rendering judgment.

The contention that the pleadings are insufficient to sustain a recovery on grounds we have discussed must likewise fail. It is true that the complaint alleges a breach of an agreement to transmit "by wireless 250,-000 marks at .69 or better," and states that the defendant failed to carry out the terms of this agreement, and does not plead the provision of the agreement that "no liability shall attach * * * for any cause beyond our control." This omission could not surprise or prejudice the defendant, when the evidence respecting the dealings of the parties consisted of stipulated written documents. Moreover, the complaint states that the plaintiff served upon the defendant written "notice of rescission" on November 23, 1922, and alleges a demand and failure to pay $43,137.72. The cause of action, though somewhat inartificially set forth, is therefore sufficiently stated. While "rescission" was perhaps an inaccurate word to use, it indicated that the plaintiff was seeking recovery

upon a cause of action other than the breach of an agreement to make a transfer of foreign credit, and showed that the plaintiff sought to recover the balance of its account, which the defendant had refused to pay.

As this action was at common law, a new trial must be granted, but the rules which must govern have been sufficiently stated, so that its future disposition should be simple.

Judgment reversed.