## AMERICAN UNION BANK v. SWISS BANK CORPORATION.
### No. 152.

Circuit Court of Appeals, Second Circuit.
April 21, 1930.

Charles C. Pearce, of New York City, for appellee.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

■ The plaintiff has brought action to recover the consideration advanced on the ground that the defendant agreed with the plaintiff to transmit 3,000,000 Polish marks to Polska Bank in the city of Warsaw for the credit of the Bank of the United States, and failed to perform its obligation. The defendant insists that the plaintiff was merely acting as defendant's agent in selling the marks to the Bank of the United States for defendant's account, whereas plaintiff claims to have made the contract on its own behalf as principal. Upon such a contract, and not one of agency, the complaint was based.

This relation of agent is sought to be established by the letter of the Swiss Bank to the plaintiff on June 1, 1920, in which the Swiss Bank speaks of the plaintiff as having sold the marks "for our account." A similar characterization is employed in the letter on June 9, 1920, of the Swiss Bank to the plaintiff. But we regard the words "for our account," used in these letters, as having no such dominant significance as is sought to be given them by the defendant. After the dispute between the parties arose, the Swiss Bank, in its letters to the plaintiff of April 10, 1923, and June 22, 1923, spoke of the transaction as "our sale to you on May 28th, 1920," and in its answer to the complaint (Record fol. 87) alleged that: "The * * * transaction was a purchase by the plaintiff from the defendant in Switzerland of foreign exchange." Nowhere is an agency set forth either in pleadings or proof.

But the defendant says the words in its cable of May 27, 1920, "sell best three million Warsaw" were a direction to the plaintiff as defendant's agent and were not, as plaintiff argues, words embodying an offer by defendant to sell to it as a principal in the transaction. Defendant adds that this is especially so because the following words, "limit 60," meaning that 60 cents was the lowest price the Swiss Bank would take, were absurd when used by a seller to a buyer. Yet that is by no means necessarily so. The parties had dealt with one another before, and the market was fluctuating. In such circumstances the seller might well have urged the purchaser to offer the best price it reasonably could and

Appleton, Rice & Perrin, of New York City (T. F. D. Haines and Lee J. Perrin, both of New York City, of counsel), for appellant.

nevertheless say that 60 cents was the least price that the seller would take. The plaintiff advanced all the money, and we can see no basis for holding that it was doing this as agent apparently without compensation. Why should the defendant have been paid the $18,000 by the plaintiff instead of by the Bank of the United States if it was really selling to that bank rather than to the plaintiff? Moreover, it is hard to see why the cable of the plaintiff on May 26th, informing the Swiss Bank that the marks were to be rendered available to the United States Bank at the Polska Bank in Warsaw, was a communication from an agent to a principal. Neither this cable nor any other communication revealed to the Swiss Bank the terms of the contract between the plaintiff and the United States Bank which is stated in the record (fol. 648) to have been at 61 cents. From the whole record we think it plain that the cable by the Swiss Bank to the plaintiff on May 27, 1920, was an offer to sell at not less than 60 cents and the reply by plaintiff on May 28, was an agreement to purchase at 60 for delivery on June 6, the marks to be made available to the United States Bank at the Polska Bank in Warsaw. And, when the plaintiff used the words, "Sold three million Warsaw 60 value June sixth pay Polskakasa account Bank United States, * * *" it is to be regarded as saying to the Swiss Bank: The marks you offered to sell are sold to us at 60 and are to be made available by payment at the Polska Bank on June 6th for account of the Bank of the United States. We are of the opinion that the Swiss Bank agreed with the plaintiff to make a credit for 3,000,000 available for the United States Bank at the Polska Bank in Warsaw on or before June 6, 1920.

The Swiss Bank initiated the' financial operations in Poland through its agent and correspondent, the Commerce Bank of Warsaw. But the Commerce Bank did not transmit marks to the Polska Bank or notify the Polska Bank until June 10, 1920, that they were "holding to pay you Polish marks 3,000,-000 which sum we request you to charge to our account." Even then the Polska Bank did not open a credit for the United States Bank on its books. The plaintiff paid for the marks by a check on the Chemical Bank which was dated June 5, was sent to the Chemical Bank on that date, and was marked "Paid" on June 7, so that on June 6th the funds were available to the Swiss Bank. It is quite unreasonable to suppose that a seller of rapidly fluctuating exchange had the right to wait until June 10 (four days after the time agreed upon to perform) before fulfilling its contract.

Defendant argues that the words "60 value June 6" in plaintiff's cable of May 28, 1920, related to the time when interest would begin to run on defendant's obligation and not to the time of performance. There is nothing really to substantiate this. The contract took effect in New York when the plaintiff accepted defendant's offer, and was to be performed on June 6, 1920 under that law. Moreover the relief sought is restitution because of failure of defendant to perform, and for that reason the law of New York, where the money was paid, governs. Such was the holding in Sokoloff v. National City Bank, 239 N. Y. at page 170, 145 N. E. 917, 37 A. L. R. 712. But, even if the law of Poland applies, because the marks were to be made available there, the agreement is not shown to have been subject to any peculiar interpretation under Polish law or custom. The defendant filed the affidavit of Goetz to the effect that, by means of the various letters and telegrams heretofore mentioned, the defendant had in effect set up the credit for the United States Bank at Polska Bank as agreed. But Goetz pretended to no knowledge of Polish law. His statements about the effect of the various transactions are the mere personal conclusions of a banker. While the Polska Bank had undoubtedly been given the means of establishing the credit, it never in fact had carried out the defendant's directions or set up any credit on its books. Moreover, Exhibit C, attached to the answer, indicates that the defendant regarded the time for performance as June 6, for on June 1, 1920, it cabled its agent, the Commerce Bank:

"We confirm our telegram of the 31st ultimo asking you to pay for our account to the Polska * * * at Warsaw the sum of: Polish Marks 3,000,000—on the 6th of June before noon for which please charge our account under advice."

The contract was to establish a credit at the Polska Bank which the United States Bank could use on June 6, or, if that was a Sunday, on the next business day. That, in our opinion, was the meaning of "Value June 6th." Such an obligation the defendant failed to perform.

But there is a more fatal difficulty than delay until June 10th, for the defendant failed to perform even then. It had contracted to establish a credit at the Polska Bank for the United States Bank. It was not enough to tell the Polska Bank to do this,

or to place the Commerce Bank in funds whereby the transaction might be carried out. Indeed, the Commerce Bank was not instructed by the defendant to do anything more than to pay 3,000,000 marks to the defendant's account. So that at best, the defendant only placed the Polska Bank, on June 10, in a position where it might have set up a credit for the United States Bank, but did not actually obtain the credit. The Polska Bank failed to set up the credit or even to debit its account with the Commerce Bank with the amount of 3,000,000 marks. Judge Mack, in the District Court, held that under such circumstances the defendant did not perform its contract. There is a plain difference between a credit at the Polska Bank for the defendant and one for the United States Bank. The first could be drawn against by the defendant irrespective of the wishes of the plaintiff or the United States Bank, while the second would create a direct indebtedness of the Polska Bank to the United States Bank and make the credit available as agreed. Sokoloff v. National City Bank, 250 N. Y. at pages 77, 78, 164 N. E. 745.

It is said that the Polska Bank was the agent of the plaintiff, and that its failure to set up the credit for the United States Bank as provided in the agreement must be imputed to plaintiff and is a bar to its recovery. We do not regard this contention as sound. Here is a definite contract to pay to Polska Bank for account of Bank of the United States. The credit was not set up and until that was done the contract was not performed. Sokoloff v. National City Bank, 250 N. Y. at pages 77, 78, 164 N. E. 745.

The case of Myers v. Brown, 142 App. Div. 658, 127 N. Y. S. 374, where a bank was selected by the plaintiff to make a payment of moneys remitted by Brown Bros., differs from the present. Here the plaintiff designated Polska Bank as the final depositary, but required payment to it for account of the United States Bank. The deposit was never made for account of the United States Bank; that is to say, the credit was never set up. No such question as the identification of the beneficiary arose here, as in Myers v. Brown, supra.

We hold that the defendant failed to perform its contract, and must therefore restore the consideration paid. Aschen & Munich Fire Ins. Co. v. Guaranty Trust Co. (C. C. A.) 27 F.(2d) 674; Richard v. Credit Suisse, 242 N. Y. 346, 152 N. E. 110, 45 A. L. R. 1041.

Judgment affirmed.